UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 05-CV-3731 (JFB) (WDW)

———————————

JOSEPH AND MARIA BURKE,

Plaintiffs,

VERSUS

QUICK LIFT, INC., AND STATEN ISLAND BOAT SALES,

Defendants.

———————————

QUICK LIFT, INC.,

Third-Party Plaintiff,

VERSUS

CARVER BOAT CORPORATION, LLC,

Third-Party Defendant.

———————————

MEMORANDUM AND ORDER
November 16, 2006

———————————

JOSEPH F. BIANCO, District Judge:

This is an action brought in admiralty, pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiffs Dr. Joseph and Maria Burke (the "Burkes") bring this maritime and derivative torts action against defendants Quick Lift, Inc., ("Quick Lift") and Staten Island Boat Sales ("SIBS") (collectively, "defendants"), alleging that the Burkes were injured as a result of defendants' failure to properly install a piece of equipment on a yacht purchased by the Burkes. This Court has jurisdiction over the Burkes' claims under 28 U.S.C. §§ 1333 and 1367. Defendants move to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted.[1]  For the

———

[1] Quick Lift has submitted a Rule 12(b)(6) motion to dismiss and a memorandum of law in support of the motion. SIBS has submitted a separate Rule 12(b)(6) motion presenting bases for dismissal identical to those set forth by Quick Lift and, in an

reasons that follow, the motion is denied.

Defendant Quick Lift also brings a third-party claim against third-party defendant Carver Boat Corporation, LLC ("Carver"), alleging that any damages suffered by the Burkes were caused by Carver. Carver moves pursuant to Rule 12(b)(6) to dismiss the third-party complaint for failure to state a claim upon which relief may be granted. For the reasons that follow, the motion is denied.

Carver also moves, under Rule 11 of the Federal Rules of Civil Procedure, to impose sanctions against Quick Lift for filing a frivolous third-party complaint. For the reasons that follow, that motion is also denied.

I. BACKGROUND

A. THE FACTS

For the purposes of defendants' motion, the facts as alleged in the complaint are assumed to be true and are construed in a light most favorable to plaintiffs, the non-moving party.

Dr. Joseph and Maria Burke, husband and wife, are residents of Nassau County, New York. (Compl. ¶ 3.) Defendant Quick Lift is a corporation, incorporated in Florida, that manufactures and installs hydraulic davits on boats. (Compl. ¶ 4.) A davit is a mechanical device on a vessel that is used to lift dinghys, or small boats, from the water's surface onto the bridge of the vessel. (Compl. ¶ 24; Pls.'s Response in Opposition ("Pls.'s Response") at 6 & n.5.)

SIBS is a corporation, incorporated in New York, that sells boats, and is an authorized dealer of boats manufactured by Carver. (Compl. ¶ 5.) Generally, SIBS takes title to boats from Carver, and then re-sells those boats to buyers, such as the Burkes. (Compl. ¶ 5.)

In April 2000, Dr. Burke visited SIBS to discuss buying a particular boat, the Carver 450 Voyager (the "Voyager"). (Compl. ¶ 6.) Dr. Burke wanted a Voyager with certain features, but SIBS did not have a boat in-stock that had the requested features. (Compl. ¶ 6.) Accordingly, in order to induce Dr. Burke to purchase the Voyager that SIBS had in-stock, SIBS offered to install a boat-lift davit, and other features, on the Voyager at no additional charge. (Compl. ¶ 7.)

Dr. Burke agreed to purchase the Voyager that SIBS had in-stock, as long as he could take delivery of the boat by Memorial Day weekend of 2000. (Compl. ¶ 8.) Initially, SIBS told Dr. Burke that it could not meet the Memorial Day delivery deadline, but when Dr. Burke later threatened to not purchase the Voyager, SIBS relented and agreed to meet the deadline. (Compl. ¶¶ 9-11.)

Prior to delivery of the Voyager, SIBS hired Quick Lift to install a "low-profile hydraulic yacht davit" on the boat. (Compl. ¶ 12.) SIBS also installed, on its own, a range of other features on the Voyager. (Compl. ¶ 12.) All of the additional features were installed on the Voyager after SIBS had taken title and possession of the boat from Carver.

---

"Affidavit in Support" filed by counsel for SIBS, "adopts and incorporates the arguments and memorandum of law . . . filed on behalf of Quick Lift." (SIBS' Affidavit in Support ¶ 10.) Accordingly, this Court will jointly consider defendants' respective Rule 12(b)(6) motions, and will consider the memorandum offered in support of Quick Lift's motion as presenting the arguments of both Quick Lift and SIBS.

2

(Compl. ¶ 12.)

The Burkes took delivery of the Voyager in May 2000. (Compl. ¶ 13.) After taking delivery, the Burkes experienced many problems with the Voyager, including, but not limited to, a weight imbalance, leaking interiors, electrical shortages, and multiple engine and exhaust problems. (Compl. ¶¶ 14-23.)

On April 19, 2005, the Burkes were preparing their boat to leave a port in the Bahamas. (Compl. ¶ 24.) That day, they were using the davit to hoist a dinghy onto the Voyager for storage.[2] (Compl. ¶ 24.) Mrs. Burke was located on the bridge of the Voyager, where she could manually control the davit with one hand and, with her other hand, hold the device that operated the davit's cable. (Compl. ¶ 24.) Dr. Burke stood below on the aft deck of the Voyager. (Compl. ¶ 25.) When the dinghy was raised, Mrs. Burke reached out with one hand to pull in the davit in order to position the dinghy over its storage berth. (Compl. ¶ 25.) As she pulled in the davit, she heard a loud cracking sound, and the davit dropped one to two feet. (Compl. ¶ 25.) Mrs. Burke grabbed the falling davit with both hands in an effort to keep the davit, and the dinghy to which it was still connected, from falling onto the aft deck of the Voyager and on top of Dr. Burke. (Compl. ¶ 5.)

Mrs. Burke was pulled into an "unnatural position" by the falling davit arm and, as a result, sustained serious injury to her back. (Compl. ¶ 26.) Mrs. Burke has experienced excruciating pain as a result of her injuries and, for a time, was barely able to move.

---

[2] The davit installed on the Voyager was rated to lift a maximum of 800 pounds. (Compl. ¶ 30.)

(Compl. ¶ 26.)

According to plaintiffs, the davit arm malfunctioned because the "top plate" that connects the davit arm to the boat experienced a "catastrophic failure" – the plate broke away from the fiberglass decking that held it to the boat. (Compl. ¶ 27.) Further inspection of the davit arm revealed other deficiencies in its installation, including, but not limited to, the failure to install a bottom plate beneath the fiberglass decking, the failure to "thru-bolt" the top and bottom plates, and the use of "self-tapping machine screws" to secure the decking to the davit arm. (Compl. ¶ 27.)

B. PROCEDURAL HISTORY

On August 5, 2005, the Burkes filed a complaint against defendants Quick Lift and SIBS, alleging a maritime tort claim against both defendants for negligent installation, and a derivative claim for loss of consortium.[3] Specifically, plaintiffs allege that SIBS and Quick Lift breached a duty to properly install the davit, thereby causing Mrs. Burke's injuries and giving rise to Dr. Burke's loss of consortium claim. (Compl. ¶ 34.) On July 14, 2006, defendants moved to dismiss the Burkes' complaint.

On October 12, 2005, Quick Lift filed a third-party complaint against Carver, alleging that any damages suffered by the Burkes were caused by the third-party defendant Carver. On July 14, 2006, third-party defendant Carver moved to dismiss Quick Lift's third-party complaint and, in a separate motion, to

---

[3] Originally, the complaint included a breach of warranties claim against SIBS. By stipulation dated June 7, 2006, the parties agreed to discontinue the breach of warranties claim against SIBS.

3

impose sanctions against Quick Lift for filing a frivolous pleading.

II. DISCUSSION

A. ADMIRALTY JURISDICTION

Although none of the parties have raised the issue of this Court's admiralty jurisdiction over the case, the Court will address the question *sua sponte*. *See, e.g., McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) ("Whether a federal court has subject matter jurisdiction is a question that may be raised at any time . . . by the court *sua sponte*.") (internal quotation marks omitted).

This case satisfies the necessary conditions for exercising admiralty jurisdiction over plaintiffs' maritime tort claim. The complaint alleges facts showing (1) that the alleged tort occurred on or over "navigable waters"; (2) that the type of incident alleged has "a potentially disruptive impact on maritime commerce"; and (3) that the conduct at issue bears a "substantial relationship to [a] traditional maritime activity." *See LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999) (citing *Jerome B. Grubart, Inc., v. Great Lakes Dredge & Dock. Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); *see also Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); *Smith v. Mitlof*, 198 F. Supp. 2d 492, 500 (S.D.N.Y. 2002) (citing *Keene Corp. v. United States*, 700 F.2d 836, 843 (2d Cir. 1983)).

First, the alleged tortious event occurred on navigable waters at a port in the Bahamas. *See Sisson*, 497 U.S. at 360 (fire aboard boat docked at a marina took place on a "navigable waterway"); *Stanley v. Bertram-Trojan, Inc.*, 868 F. Supp. 541 (S.D.N.Y. 1994) (admiralty jurisdiction lies over tort claim arising from accident that occurred in navigable waters off the Bahamas). For purposes of determining admiralty jurisdiction, the tort "occurs" where the negligence "takes effect, not where the negligent act occurred." *See Butler v. American Trawler Co., Inc.*, 887 F.2d 20, (1st Cir. 1989); *Cigna Property & Casualty Ins. Co., v. Bayliner Marine Corporation*, No. 92 Civ. 7891 (AGS), 1995 WL 125386, at *11 (S.D.N.Y. March 22, 1995) (events underlying maritime tort claim for, *inter alia*, negligent installation of boat components "occurred on navigable waters" where components were installed prior to sale of boat); *see also Woessner v. Johns-Manville Sales Corp.*, 757 F.2d 634, (5th Cir. 1985) ("[T]he locality requirement is satisfied where a defective product furnished in the construction of a ship later caused damage or injury on navigable waters, even though the defendant's alleged wrong occurred on land.").

Here, for the purposes of the jurisdictional inquiry, the tort "occurred" on navigable waters because the negligence "took effect" while the Burkes' vessel was docked at a port on navigable waters, even though the negligent act itself – the installation of the davit – took place elsewhere. *See Mink v. Genmar Industries, Inc.*, 29 F.3d 1543, 1546 (11th Cir. 1994) (pleasure boat's alleged design defect "could not have manifested itself, and the injury could not have occurred until the vessel was actually operated as a vessel in navigation. Thus, logically, the tort is a maritime tort."); *see also Bodnar v. Hi-Lex Corp.*, 919 F. Supp 1234, 1238 (N.D. Ind. 1996) ("[T]he locality test is met despite the fact that the allegedly defective . . . repair of the boat occurred on land.").

4

Second, the type of incident alleged in this case has a potentially disruptive impact on maritime commerce. *See, e.g., Sisson*, 497 U.S. at 364; *see also LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999); *Sirius Inc. Co. (UK) Ltd. v. Collins*, 16 F.3d 34, 37 (2d Cir. 1994) (stating that "admiralty jurisdiction extends to matters involving pleasure boats").

In *Sisson*, the Court found that "[t]he jurisdictional inquiry does not turn on the *actual* effects on maritime commerce" arising from the tortious event, but rather on the "potential disruption to commercial maritime activity." *Sisson*, 497 U.S. at 364 (emphasis in original). The essential question is "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Grubart*, 513 U.S. at 539.

This Court finds that the improper installation, and subsequent failure, of a device designed to lift small boats from the water onto a vessel while the vessel is docked in navigable waters, poses more than a fanciful risk of disrupting commercial activity at ports and on waterways. Among other possibilities, the failure of a boat-lift davit presents a hazard to nearby vessels at the time of the davit's malfunction and, subsequently, threatens to disrupt commercial traffic in order to provide medical treatment to persons who may have been injured by the failed equipment. *See Szollosy v. Hyatt Corp.*, 208 F. Supp. 2d 205, 213 (D. Conn. 2002) ("the emergency medical treatment of [the alleged victim] also carried the potential to disrupt maritime commerce"); *Emery v. Rock Island Boatworks, Inc.*, 847 F. Supp. 114, (C.D. Ill. 1994) (finding that "a personal injury aboard [a] vessel . . . carries the potential of necessitating extraordinary rescue measures affecting [maritime] commerce"); *cf. Kelly v. United States*, 531 F.2d 1144, 1147 (2d Cir. 1976) (rescue operations of Coast Guard following capsize of recreational sailboat establish incident's significant relationship to traditional maritime activities).

Third, the conduct at issue bears a substantial relationship to the traditional maritime activity of the manufacture and design of a pleasure boat. *See Roane v. Greenwich Swim Committee*, 330 F. Supp. 2d 306, 314-15 & n.4 ("The proper design and manufacture of a [non-commercial] vessel intended for use on navigable waters bears a substantial relationship to traditional maritime activity."); *see also Hassinger v. Tideland Elec. Membership Corp.*, 781 F.2d 1022 (4th Cir. 1986) (admiralty jurisdiction over negligence claim by pleasure boat sailors against boat manufacturer, marketer, supplier, and seller) ("[O]ne of the purposes of admiralty law is to protect [recreational] sailors from defective equipment while they are engaged in maritime activity."); *see generally East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (recognizing products liability and products actions based on negligence "as part of the general maritime law").

Accordingly, this Court may exercise its jurisdiction over admiralty matters, pursuant to 28 U.S.C. § 1333, to hear plaintiffs' maritime tort claim.

## B. Motion to Dismiss Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 145 (2d Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005), *cert. granted*, 126 S.Ct. 2965 (2006).

## C. Statute of Limitations

Defendants assert that the Burkes failed to satisfy (1) the four-year statute of limitations for a breach of warranty claim under New York law or, in the alternative, (2) the three-year limitations period applicable to maritime tort claims. (Def.'s Mem. of Law in Support of Motion to Dismiss ("Def.'s Mem.") at 6.) This Court finds that the three-year limitations period for maritime tort claims applies to the instant action and that plaintiffs have asserted their claims in a timely manner.

### 1. Applicable Limitations Period

Defendants argue that plaintiffs' claim alleging negligent installation "actually sounds in breach of [] warranty in the contract," rather than in tort, because the defendants did not owe a duty to plaintiffs other than those created by contract. (Defs.'s Mem. at 5-6.) Therefore, according to defendants, plaintiffs cannot "convert a claim sounding in contract into a claim sounding in tort," and the four-year limitations period for a breach of contract claim applies to this action.[4] (*Id.* at 6.)

In response, plaintiffs argue that both defendants were subject to a "common-law duty of care" to install a davit that did not present an unreasonable risk of harm to individuals when used properly. (Pls.'s Response at 7.) Moreover, according to plaintiffs, no contract existed between the Burkes and defendant Quick Lift – and, thus, any obligations owed by Quick Lift to the Burkes were necessarily imposed by law, not contract. (*Id.* at 8-9.)

"With admiralty jurisdiction comes the application of substantive admiralty law." *East River Steamship Corp.*, 476 U.S. at 864; *see Silivanch v. Celebrity Cruises, Inc.*, 171 F. Supp. 2d 241, 252 (S.D.N.Y. 2001) (quoting

---

[4] Presumably, defendants' argument – that the injuries suffered by Mrs. Burke do not give rise to a tort claim – would also extinguish Dr. Burke's derivative claim for loss of consortium. *See Goldman v. MCL Companies of Chicago, Inc.*, 131 F. Supp. 2d 425, 427 (S.D.N.Y. 2000) ("It is well established . . . that a loss of consortium claim is not an independent cause of action . . . and may only be maintained . . . pursuant to the primary tort.") (internal quotation marks and citations omitted).

*East River Steamship Corp.*, 476 U.S. at 864). When applying admiralty law, absent a relevant statute, federal common law principles of admiralty supply the rule of decision.[5] *See Sompo Japan Ins. Co. of America v. Union Pacific R. Co.*, 456 F.3d 54, 74 (2d Cir. 2006). "It is settled that the general maritime law imposes duties to avoid . . . negligence." *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 813, 121 S.Ct. 1927, 150 L.Ed.2d 34 (2001) (internal quotation marks omitted); *see Smith v. Mitlof*, 130 F. Supp. 2d 578, 582 (S.D.N.Y. 2001) ("The common law rules of negligence apply in admiralty law."); *Jurgens v. Poling Transportation Corp.*, 113 F. Supp. 2d 388, 396-97 (E.D.N.Y. 2000) (same). Moreover, under general maritime law, a party may assert products liability tort claims based on the negligence of a seller or distributor, as long as that party has suffered personal injury, rather than "purely economic" losses, due to the conduct of the alleged tortfeasors. *See East River Steamship Corp.*, 476 U.S. at 870 (incorporating principles of products liability and products actions based on negligence into maritime law).

Accordingly, this Court finds that plaintiffs assert a maritime tort claim for personal injury arising from defendants' breach of duties imposed by established federal maritime rules. Therefore, the Uniform Statute of Limitations for Maritime Torts (hereinafter, the "Maritime Limitations Statute") applies to plaintiffs' maritime tort claim.[6]

---

[5] In papers submitted to the Court regarding defendants' motion, both parties look to New York state law to support their arguments. A court sitting in admiralty must look to state law only as a *supplement* to federal maritime law, in the absence of "an established federal maritime rule governing the issue in dispute." *Stolt-Nielsen SA v. Animalfeeds Intern. Corp.*, 435 F. Supp. 2d 382, 385 (S.D.N.Y. 2006); *see Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2d Cir. 2004). This Court need not look to New York law because established federal maritime rules govern the issue in dispute.

[6] Defendants cite to *Niagara Mohawk Power Corp. v. Stone & Webster Engineering*, 725 F. Supp. 656, 662 (N.D.N.Y. 1989), for the proposition that, under New York law, no independent cause of action sounding in tort exists for the negligent performance of contractual services. (Defs.'s Mem. at 5.) However, *Niagara Mohawk* does not offer support for defendants' motion in this case. In *Niagara Mohawk*, the plaintiffs asserted state law tort claims arising from the breach of a contract and sought recovery for purely economic losses caused by defendant's breach. *Niagara Mohawk Power Corp.*, 725 F. Supp. at 663-65 ("The negligence claims in the complaint . . . were an afterthought to the cause of action for breach of a contract. . . . When compensation is sought for purely economic loss, the usual means of redress is an action for breach of contract."). Here, by contrast, plaintiffs allege a maritime tort claim, in the absence of a cause of action for breach of contract, and seek compensation for personal injury. Moreover, even assuming that plaintiffs asserted a state law tort claim, rather than a maritime tort claim, New York law would recognize a cause of action for personal injury arising from the negligent performance of contractual duties. *See Consolidated Edison Co. of New York, Inc., v. Westinghouse Electric Corp.*, 567 F. Supp. 358 (S.D.N.Y. 1983); *see also Jacob v. Kimberly-Clark Corp.*, No. 05 Civ. 1739 (ILG), 2006 WL 1582149, at *6 (E.D.N.Y. June 5, 2006) (characterizing *Niagara Mohawk* as standing for the proposition that, under New York law, the "'economic loss' doctrine" bars negligence claims that seek to recover purely economic loss arising from the breach of a contract).

2. Date of Accrual under the Maritime Limitations Statute

The Maritime Limitations Statute states, in relevant part, that "a suit for recovery of damages for personal injury . . . *arising out of a maritime tort*, shall not be maintained unless commenced within three years from the date the cause of action accrued." 46 U.S.C. App. § 763(a) (2000) (emphasis added); *see Puthe v. Exxon Shipping Co.*, 802 F. Supp. 819, 829 (E.D.N.Y. 1992).

According to defendants, plaintiffs' claims accrued upon the allegedly negligent installation of the davit, sometime before May 2000. (Defs.' Mem. at 5.) Plaintiffs argue that their claims accrued upon the alleged failure of the davit, on April 19, 2005, which caused Mrs. Burke's injuries. (Pl.'s Response at 2.) The Burkes filed their complaint on August 5, 2005, more than three years after the installation of the davit, but within three years of the date that the davit allegedly malfunctioned and caused Mrs. Burke's injuries. Thus, the date when the Burkes' claims "accrued" – that is, when the time period in which the Burkes could sue began to run – determines the timeliness of the Burkes' claims.

Under the Maritime Limitations Statute, the date of accrual is determined according to the "discovery rule." *White v. Mercury Marine*, 129 F.3d 1428, 1435 (11th Cir. 1997); *see Puthe*, 802 F. Supp. 819 (applying the discovery rule to determine date of accrual under the Maritime Limitations Statute). In *White*, with regard to application of the discovery rule under the Maritime Limitations Statute, the Eleventh Circuit Court of Appeals noted that "there is no binding precedent directly on point." *White*, 129 F.3d at 1432. However, the court went on to persuasively argue that, based on existing Supreme Court jurisprudence, "courts should use the discovery rule to determine when a cause of action accrues" under the Maritime Limitations Statute. *White*, 129 F.3d at 1432-35; *see also Puthe*, 802 F. Supp. at 829-30 ("It appears that the Second Circuit has not yet had reason to pass on the limitations rule [used to determine the date of accrual for tort actions under the Maritime Limitations Statute]. However, as a general rule, a claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the action.").

Specifically, the court in *White* examined two Supreme Court cases that considered "statute of limitations language materially identical to that of [the Maritime Limitations Statute]," 129 F.3d at 1432, and chose to apply the discovery rule to determine the date of accrual under the respective statutes. *See id.* at 1432-33 (discussing *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), and *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). Thus, in *White*, the court also chose to apply the discovery rule to "mark[] the date [that] the limitations period starts running" under the Maritime Limitations Statute. *See White*, 129 F.3d at 1433. Accordingly, this Court finds that, for a claim governed by the Maritime Limitations Statute, the "discovery rule" directs that the claim accrues when the plaintiff knew or should have known of the injury that is the basis of the action. *See id.* at 1435; *Kubrick*, 444 U.S. at 123; *see also Mix v. Delaware and Hudson Ry. Co.*, 345 F.3d 82, 86 (2d Cir. 2003) (in a FELA action, claim accrues when "the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury").

8

Applying the discovery rule to the instant case, this Court finds that plaintiffs could not have known or had reason to know of the alleged injury – the negligent installation of the davit – until the date that the davit arm malfunctioned, April 19, 2005. Therefore, because plaintiffs filed suit less than three years from that date, on August 5, 2005, their claims are timely under the Maritime Limitations Statute. *See* 46 U.S.C. App. § 763(a) (2000).

Defendants assert that the discovery rule applies to "only" those cases where "plaintiff has sustained a latent injury." (Defs.'s Mem. in Reply to Opposition to Dismiss Complaint (hereinafter "Defs.' Reply") at 2.) In support, defendants point to *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223 (5th Cir. 1984), where the court refused to apply the discovery rule to a claim under the Jones Act and, instead, applied a "time of event rule[,] which establishes that the statutory limitations period [begins] to run at the time of the trauma" suffered by the plaintiff. *Id*. at 233.

The Fifth Circuit's holding in *Albertson* does not foreclose the application of the discovery rule in this case. The court in *Albertson* found that "even where a plaintiff later discovers that an act of the defendant caused a more serious injury than the plaintiff first realized, the statute of limitations [will] have commenced running from the first point at which the plaintiff realized that he suffered harm, albeit minor, at the defendant's hands." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 367 (5th Cir. 2003). Thus, in *Albertson*, because "*some* injury [was] discernable when the tortious act occur[ed], the time of event rule respecting statutes of limitations applie[d], and the plaintiff's cause of action [was] deemed to have accrued." *Id*. (citing *Albertson*, 749 F.2d at 229 (emphasis added)).

*Albertson* is clearly distinguishable from the instant case. Here, Mrs. Burke did not first suffer some minor harm and then, after the expiration of the limitations period, discover a more serious injury caused by the defendants' conduct. Rather, the first point at which "plaintiff[s] realized that [they] suffered harm" due to defendants' conduct was upon the alleged failure of the davit arm that caused Mrs. Burke's injuries.[7] *See Alcoa, Inc.*, 339 F.3d at 367.

D. QUICK LIFT'S THIRD-PARTY CLAIMS

Third-party defendant Carver seeks to dismiss the third-party complaint, pursuant to Rule 12(b)(6). This Court finds that the third-party complaint states a claim upon which Carver could be found liable either to plaintiffs or to third-party plaintiff Quick Lift. Accordingly, for the reasons that follow, Carver's motion to dismiss is denied.

Initially, this Court notes that, in deciding the instant motion, it will disregard the

---

[7] However, even assuming *arguendo* that the "time of event rule" used in *Albertson* determined the date of accrual in this case, the Burkes' claims would still be timely. Here, the "time of the trauma," which, under the time of event rule, initiates the running of the limitations period, was April 19, 2005 – the date of the alleged malfunction of the davit that caused the Burkes' injuries. Therefore, regardless of how the instant case is characterized – as a "latent injury" case or as one where there was an "immediately discernable" injury – it is clear that the plaintiffs commenced their maritime tort claim within the limitations period because "discovery of the injury and its cause . . . mark[ed] the date" of accrual. *See White*, 129 F.3d at 1433; *see also M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003).

material outside the pleadings offered in response to the third-party defendant's motion. Specifically, the affidavit of Quick Lift's Vice President, Daniel Piles, which was submitted along with the third-party plaintiff's opposition papers, states, among other things, that (1) "[b]ecause of the manufacture of the flybridge by Carver in a manner which included a specific location thereon at which to install a davit, I was implicitly instructed by Carver to install the davit on the flybridge at that location"; and (2) "Carver negligently manufactured the flybridge with only one (top) backing plate at the specific location where Carver instructs a davit to be installed, which davit requires two (top and bottom) backing plates." (Piles Affidavit at ¶¶ 8, 10.) This affidavit is hereby excluded from consideration, and, accordingly, the Court decides the motion on the third-party complaint alone.[8] *See, e.g.*, *Kopec v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991) ("Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment.") (quoting *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1998)) (internal quotation marks omitted); *see also Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999) ("[T]he conversion requirement helps ensure that courts will refrain from engaging in fact-finding when considering a motion to dismiss, and also that [parties] are given a fair chance to contest . . . evidentiary assertions.").

Indemnity of third-party defendants is permissible in an admiralty case pursuant to Rule 14(c) of the Federal Rules of Civil Procedure. *See Montauk Oil Transp. Corp. v. Tug El Zorro Grande*, 54 F.3d 111, 114 (2d Cir. 1995). Rule 14(c) allows the defendant in an admiralty action to implead another party who may be liable *either* to the original plaintiff or to the third-party plaintiff. *See* 6 Charles Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1465 (2d ed. 2006); *Excel Shipping Corp. v. Seatrain Intern. S.A.*, 584 F. Supp. 734, 743 (E.D.N.Y. 1984); *see also Onhtrup v. Gallagher*, No. 03 Civ. 4891 (TJB), 2006 WL 2792790, at *3 (D.N.J. Sept. 27, 2006).[9] The impleaded third-party defendant may assert "any defenses to the [third-party plaintiff's] claim . . . in the manner provided in Rule 12." *Id.*[10]

This Court will grant a motion made under Rule 12(b)(6) to dismiss a Rule 14(c) third-party complaint only if it "appears beyond doubt that the [third-party] plaintiff can prove

---

[8] The Court also declines, at this early juncture in the case, to convert this motion to dismiss to one for summary judgment.

[9] Rule 14(c) provides, in relevant part, that: "[w]hen a plaintiff asserts an admiralty or maritime claim . . ., the defendant . . . may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 14(c).

[10] Under Rule 14(c), following impleader of a third-party defendant, the original plaintiff is "forced to assert his claims directly against the third-party defendant. This is to be distinguished from practice under Rule 14(a) [governing impleader in non-admiralty cases], which does not automatically establish a direct relationship between plaintiff and the third-party defendant upon the assertion of a third-party claim." 6 Charles Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1465 (2d ed. 2006).

no set of facts in support of his claim which would entitle him [or the original plaintiff] to relief." *See Weixel*, 287 F.3d at 145 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see Friedman v. Hartmann*, 787 F. Supp. 411, 414-15 (S.D.N.Y. 1992). The appropriate inquiry is "not whether a [third-party] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly,* 425 F.3d 99, 106 (2d Cir. 2005), *cert. granted*, 126 S.Ct. 2965 (2006) (internal quotation marks omitted).

The original complaint alleges that Mrs. Burke suffered injuries as a result of the improper installation of the davit on the Voyager. (Compl. ¶¶ 28-34.) Specifically, plaintiffs allege that:

> Quick Lift failed to properly inspect the boat to determine if the bottom backing plate had been installed at the Carver factory. Rather, Quick Lift assumed that, because that backing plate is standard equipment on the larger Voyagers (53 feet and larger), it was also installed on this Carver 450 Voyager.

(Compl. ¶ 32.) Plaintiffs assert that, as a result of this failure to inspect the boat, defendant Quick Lift failed to install a "backing plate" that was needed to properly secure the davit to the Voyager. (Compl. ¶ 33.) Plaintiffs do not specifically allege any misconduct by Carver that contributed to the alleged malfunction of the davit.

The third-party complaint concedes that the third-party plaintiff, Quick Lift, "did sell and install" the davit that allegedly malfunctioned and caused Mrs. Burke to suffer injury. (Third-Party Compl. ¶ 6.) The third-party complaint, however, attaches the original complaint and asserts that the damages suffered by the Burkes were actually "caused by the negligence or failure or breach of warranty" of Carver "in manufacture or sale of [the Voyager]." (Third-Party Compl. ¶ 6.)

Although the third-party complaint is devoid of details underlying the claims, the Court finds that it is adequate under the circumstances of this case to state a cause of action. *See Rosenberg v. Silver*, 762 F.2d 255, 256 (2d Cir. 1985) ("The complaint alleges, simply but adequately, that the . . . plaintiff was injured through the negligence of the defendants. It states a cause of action."); *see also Banco Continental v. Curtiss National Bank of Miami Springs*, 406 F.2d 510, 514 (5th Cir. 1969) ("It is immaterial to the validity of [plaintiff's] case that allegations of negligence against various defendants appear inconsistent, or that it cannot pinpoint the exact link in that chain at which negligence occurred, by specifying particular breaches of duty.") (footnote omitted); *cf. Tucker v. Janney Montgomery Scott, Inc.*, No. 96 Civ. 1923 (LLS), 1997 WL 151509, at *4 (S.D.N.Y. April 1, 1997) (negligence and breach of fiduciary duty claims did not warrant dismissal as conclusory because the "claims sufficiently identify the nature of defendants' allegedly careless course of conduct to satisfy the liberal pleading standard of Rule 8(a)").[11]

---

[11] Courts have reached a similar conclusion in denying motions for a more definite statement of a claim under Fed.R.Civ.P. 12(e). *See, e.g., Kok v. First Unum Life Insurance Co.*, 154 F. Supp. 2d 777, 781-82 (S.D.N.Y. 2001) ("A motion pursuant to Rule 12(e) should not be granted unless the complaint is so excessively vague and ambgiuous as to be unintelligible and as to prejudice the

11

It may be that, after discovery is complete, Carver can demonstrate that there is no factual basis for the claims in the third-party complaint and, thus, summary judgment is warranted. However, at this early juncture, dismissal of the third-party complaint is inappropriate where it is not "beyond doubt" that no set of facts would entitle the third-party plaintiff to relief. *See Weixel*, 287 F.3d at 145. Accordingly, because the third-party complaint states a cause of action that may make Carver liable to either the third-party or the original plaintiff, Carver's motion to dismiss the third-party complaint is denied.[12]

E. CARVER'S MOTION FOR SANCTIONS

Third-party defendant Carver also seeks to impose sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), against Quick Lift. Specifically, Carver claims that, in filing the third-party complaint, third-party plaintiff Quick Lift submitted a pleading that was not warranted by existing law; or by a good-faith argument for the extension, modification, or reversal of existing law, or for the establishment of new law. (Third-Party Dft.'s Mem. in Support of Sanctions at 5.) For the reasons that follow, Carver's motion for sanctions is denied.

Under Rule 11, to avoid the risk of sanctions, a plaintiff's counsel must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose."[13]

---

defendant seriously in attempting to answer it.") (internal quotations marks and citations omitted); *Markovic v. N.Y. City School Construction Authority*, No. 99 Civ. 10339 (AGS), 2000 WL 1290604, at *3 (S.D.N.Y. Sept. 13, 2000) ("[T]he rule [*i.e.,* Rule 12(e)] is designed to strike at unintelligibility rather than want of detail and . . . allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement.") (internal quotation marks and citations omitted); *777388 Ontario Ltd. v. Lencore Acoustics Corp.*, 105 F. Supp. 2d 56, 65 (E.D.N.Y. 2000) ("[T]he tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings.") (internal quotation marks and citations omitted).

[12] Third-party defendant Carver also asserts a defense of "subsequent modification" to Quick Lift's third-party claim. Under New York law, the manufacturer of a product may not be held liable "either on a strict products liability or negligence cause of action, where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of [the original] plaintiff's injuries." *Liriano v. Hobart Corp.*, 132 F.3d 124, 126 (2d Cir. 1998) (citing *Robinson v. Reed-Prentice Division*, 49 N.Y.2d 471, 475, 403 N.E.2d 440, 426 N.Y.S.2d 717 (1980)). If proven, the defense of subsequent modification would act as a complete defense to the third-party plaintiff's claim against Carver. However, the Court cannot determine at this early stage of the case, before discovery has taken place, that Carver is entitled to this defense as a matter of law. *See, e.g., Jiminez v. Dreis & Krump Mfg. Co., Inc.*, 736 F.2d 51, 54 (2d Cir. 1984) ("In applying New York law, we have held that the relationship between a substantial alteration to a machine and the causation of the injury is a jury question."); *cf. Ali v. Capitol Products Corp.*, No. 92 Civ. 7806 (PKL), 1995 WL 368446 (S.D.N.Y. June 20, 1995) (finding, as a matter of law at the summary judgment stage, that the defense of subsequent modification barred plaintiff's negligence claim under New York law).

[13] Initially, the Court notes that Carver has satisfied the procedural requirements for filing the instant motion. A request for sanctions must be made by separate motion, Fed. R. Civ. P. 11(c)(1)(A), "and failure to do so is a ground for

*Gal v. Viacom Intern., Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)) (internal quotation marks omitted). In considering a motion for sanctions under Rule 11, this Court applies an objective standard of reasonableness. *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257-58 (2d Cir. 1996). Additionally, "when divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted).

This Court found, *supra*, that the third-party complaint adequately states a claim against Carver. Accordingly, because "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success," *Oliveri v Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks omitted), and since all doubts are to be resolved in favor of the signer of the complaint, this Court finds that "a competent attorney could . . . form a reasonable belief that the signed paper was well grounded in fact." 1999 WL 1243054 *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 622 (2d Cir. 1991). Thus, Carver's motion for sanctions under Rule 11 is denied.

---

denial of sanctions," *Daniel v. Safir*, 135 F. Supp. 2d 367, 378 (E.D.N.Y. 2001) (quoting *Lambertson v. Kerry Ingredients, Inc.*, 50 F. Supp. 2d 163, 170 (E.D.N.Y. 1999). In addition, a motion for sanctions under Rule 11 must describe the "specific conduct alleged to violate" the rule. Finally, the motion must be served on the subject of the motion, "but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn." FED. R. CIV. P. 11(c)(1)(A); *see Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003). Here, Carver (1) made its request for sanctions by separate motion; (2) specified the conduct alleged to violate the provisions of Rule 11; and (3) served the motion on Quick Lift on June 9, 2006, but did not submit it to the Court until more than 21 days later, on July 14, 2006.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED. Third-party defendant Carver's motion to dismiss is DENIED. Third-party defendant Carver's motion for sanctions is DENIED.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 16, 2006
Central Islip, New York

\* \* \*

The attorneys for the plaintiffs are George N. Proios, Esq., Law Offices of George N. Proios, 1350 Broadway, Suite 1507, New York, New York, 10018, and J. Stephen Simms, John S. Simms, and W. Charles Bailey, Jr., Esqs., Simms Showers LLP, Twenty South Charles Street, Suite 702, Baltimore, Maryland, 21201. The attorney for the defendant Quick Lift, Inc., is Patrick Corbett. Esq., Badiak & Will, LLP, 106 Third Street, Mineola, New York 11501. The attorney for the defendant Staten Island Boat Sales, Inc., is David Patrick Feehan, Esq., Hoey, King, Toker, & Epstein, 55 Water Street, 28th Floor, New York, New York 10041. The attorneys for the third-party defendant Carver Boat Corp., LLC, are Francis Turner, Esq., Healy & Baillie, LLP, 61 Broadway, New York, New York 10006, and Jeffrey D. Smith, Esq., Varnum, Riddering, Schmidt & Howlett, LLP, 251 North Rose Street, 4th Floor, Kalamazoo, Michigan 49007.